UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMES GORDON GEON
CHANKOOK CHUN

V.

REPUBLIC OF KOREA
SEOUL METROPOLITAN GOVERNMENT
KOREA LAND & HOUSING CORPORATION

CIVIL ACTION

NO._____

COMPLAINT

Parties

1. The Plaintiff JAMES GORDON GEON is a resident of Belmont, Middlesex County. Massachusetts and a citizen of the United States.
2. The Plaintiff CHANKOOK CHUN is a resident of Seoul, South Korea and a citizen of South Korea.
3. The Defendant REPUBLIC OF KOREA is a foreign state.
4. The Defendant SEOUL METROPOLITAN GOVERNMENT is a foreign state.
5. The Defendant KOREA LAND & HOUSING CORPORATION is an instrumentality of a foreign state.

Jurisdiction

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1330, 28 U.S.C. 1331 and 28 U.S.C. 1332.

Facts

7. Since 1970 the South Korean authorities unlawfully gave, without compensation or the Plaintiff's consent, a number of third party extractors (The First US Army being one of them - other extractors include the relatives of then-President Park Chung-hee) permissions to extract sand and gravel from the Plaintiff's land located in Sangam, Mapo-Gu, Seoul, South Korea (487-199 and other 50 lots totaling 661,162 square meters – hereinafter referred to as "The land in this case").

8. Around October of 1974, the South Korean authorities gave the First United States Army permission to extract sand and gravel from the land in this case and shortly after the First United States Army completed its extraction activities, the land in this case became classified as river (hence the right of the land in this case was compulsively expropriated to the State, according to the South Korean River Act which mandates the State ownership of all rivers in

South Korea). The South Korean Court verified that the First United States Army's extraction activities enormously exceeded the permitted amount and period of extraction from the land in this case.

9. After the submersion of the land in this case, the width of the river increased and the opposite side of the river was reclaimed in exchange of the land in this case. It is confirmed by the South Korean Court that the land in this case was exchanged with the reclaimed land on the opposite side of the river as well as other nearby reclaimed lands. A part of this reclaimed land on the opposite side of the river is presently owned by Korea Land & Housing Corporation.

10. Ever since losing the ownership of the land to the state, the Plaintiff has been diligently pursuing the legal battle against the South Korean Government and Seoul Metropolitan Government for the compensation of the land in this case. In 2008, the South Korean Supreme Court acknowledged that both the South Korean authority and the Extractors (First United States Army) were liable for the the compensation for the land in this case and imputed an overwhelming portion (more than 99%) of the compensation to the First United States Army. This is a clear violation of not only US-South Korea SOFA (Status of Forces Agreement) and its Special Act, which specify that, in case of damage incurred to a third civilian party by the United States Army, South Korea shall compensate **the whole 100% of such damage**, but also its own compensatory statutes, which clearly specify that compensation shall be paid by South Korean authorities that issued permission (Seoul Metropolitan Government), **NOT** the United States Government (First United States Army).

11. On March 25, 2009, Special Act No. 9543 "Concerning Compensation for Land Incorporated Into River" was newly legislated to compensate owners of land that had been incorporated into River Areas whose compensation was not yet realized – In accordance with this Special Act No. 9543, like the earlier compensatory statutes, compensation for land that was incorporated (submerged) into river due to permissions issued by the authority **shall be paid by the South Korean governmental entities**. This Special Act No. 9543 is a **retroactive** statute legislated to rescue the land had been previously adjudicated to be not eligible for compensation by court.

12. After the above South Korean Court decision, the Plaintiff contacted the US Government regarding the inconsistency of the above South Korean Court decision of imputing the compensation of the land in this case turning into river to the Extractors (The First US Army). On March 27, 2012, the US Army responded to the Plaintiffs agreeing that the compensation must be made by the South Korean Government and the United States is not liable for the compensation according to the above US-South Korea SOFA.

13. On November 5, 2013, the Plaintiff submitted an application for compensation to Seoul Metropolitan Government according to the above Special Act No. 9543. In December 2013, Seoul Metropolitan Government denied the Plaintiffs' request insisting that the burden of the unrealized compensation shall be borne by the First United States Army in direct violation of US-South Korea SOFA and its Special Act.

14. Hereby, torts were caused to the Plaintiffs' land. The Plaintiffs exhausted all the possible domestic remedies against the Defendants in South Korea in a legal battle that lasted more than 30 years and the South Korean authorities disposed that the unrealized compensation of the Plaintiffs' land shall be paid by the United States (The First United States Army), which is a clear violation of US-South Korea SOFA and its Special Act.

15. As stated above, a part of the reclaimed land that had been exchanged with the land in this case is presently owned by the Defendant Korea Land & Housing Corporation, who issued bonds amounting 583.8 billion South Korean won (about 553 million US dollars) in the US on November 22, 2006. Such activity is deemed as an act of commercial activity by the US Supreme Court. As a result, the Plaintiffs allege that the Defendants pursuant to Foreign Sovereign Immunities Act (FSIA) 28 U.S.C. 1605(a)(3) – the takings exception clause. The aforementioned clause stipulates that a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in case in where rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States. As stated above, the right of the land in this case was taken to the South Korean Government when the land in this case was classified as river (hence the right of the land in this case was compulsively taken to the South Korean Government) as a result of the First United States Army's extraction activities on the land in this case. The South Korean Court verified that the First United States Army enormously exceeded the permitted amount and period of extraction and those extra amount of extracted sands and gravels were illegally transferred out. This unauthorized over-extraction constitutes a violation of international law (US-South Korea SOFA) as Article 7 of US-South Korea SOFA prescribes that members of the United States armed forces and its civilian components stationed in South Korea must respect the laws of South Korea. The land in this case was classified as river immediately after the completion of extraction activities by the First United States Army. As a result 3 conditions are satisfied to qualify the takings exception of FSIA.

16. The Plaintiffs also allege the Defendants pursuant to Alien Tort Claim Act 28 U.S.C. 1350 and FSIA 28 U.S.C. 1605(a)(1) and 1605(a)(2).

17. None of the Defendants is immune under FSIA because all of the Defendants fall under the general exceptions to the jurisdictional immunity of a foreign state.

## Request for relief

WHEREFORE, the Plaintiffs request compensatory damages, including general and special damages, according to proof;

Any further relief which this Court may deem just and appropriate.

Dated: December 30, 2013

*/s/ James Gordon Geon*

By: JAMES GORDON GEON

Plaintiff in Pro Per

_Chan Kook Chun_
By: CHANKOOK CHUN

Plaintiff in Pro Per

Address: 97 Brookside Ave
Belmont, Massachusetts 02478

Telephone No. 617-826-9375