UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
                                            )
JAMES GORDON GEON and                       )
CHANCOOK CHUN,                              )
                                            )
             Plaintiffs,                    )
                                            )
     v.                                     )   Civil Action 13-cv-13251-DJC
                                            )
                                            )
REPUBLIC OF KOREA et al.,                   )
                                            )
             Defendants.                    )
                                            )
                                            )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                               May 18, 2015

### I.      Introduction

Plaintiffs James Gordon Geon ("Geon") and Chankook Chun ("Chun") (collectively, "Plaintiffs") have filed this lawsuit against Defendants Republic of Korea ("ROK"), the Seoul Metropolitan Government ("SMG"), the Korea Land & Housing Corporation ("KLHC") and Richard H. Kim in his official capacity as an employee of the United States Armed Forces Claims Services-Korea ("Kim") (collectively, "Defendants") alleging violations of the United States-South Korea Status of Forces Agreement ("US-ROK SOFA"), the US-ROK SOFA Special Act No. 1902 and the South Korean Special Compensation Act No. 9543. D. 6. Defendants have moved to dismiss. D. 61; D. 64; D. 68; D. 70. For the reasons stated below, the Court ALLOWS the motions.

## II. Standard of Review

"It is the plaintiff's burden to prove the existence of subject matter jurisdiction." Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). When a court decides a Rule 12(b)(1) motion on the pleadings, it must "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Murphy, 45 F.3d at 522. A court may review additional materials outside of the pleadings such as testimony and affidavits to determine whether it is vested with jurisdiction. Rodgers v. Callaway Golf Operations, Inc., 796. F. Supp. 2d 232, 237 (D. Mass. 2011) (citing Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)).

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court will dismiss a pleading that fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To be plausible, a claim need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 557). At bottom, a claim must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). However, "[i]n determining

## II. Standard of Review

"It is the plaintiff's burden to prove the existence of subject matter jurisdiction." Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). When a court decides a Rule 12(b)(1) motion on the pleadings, it must "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Murphy, 45 F.3d at 522. A court may review additional materials outside of the pleadings such as testimony and affidavits to determine whether it is vested with jurisdiction. Rodgers v. Callaway Golf Operations, Inc., 796. F. Supp. 2d 232, 237 (D. Mass. 2011) (citing Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)).

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court will dismiss a pleading that fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To be plausible, a claim need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 557). At bottom, a claim must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). However, "[i]n determining

## II. Standard of Review

"It is the plaintiff's burden to prove the existence of subject matter jurisdiction." Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). When a court decides a Rule 12(b)(1) motion on the pleadings, it must "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Murphy, 45 F.3d at 522. A court may review additional materials outside of the pleadings such as testimony and affidavits to determine whether it is vested with jurisdiction. Rodgers v. Callaway Golf Operations, Inc., 796. F. Supp. 2d 232, 237 (D. Mass. 2011) (citing Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)).

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court will dismiss a pleading that fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To be plausible, a claim need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 557). At bottom, a claim must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). However, "[i]n determining

whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.' . . . This context-specific inquiry does not demand 'a high degree of factual specificity.'" García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citations omitted).

**III. Factual Background**

Unless otherwise noted, the following facts are as drawn from the amended complaint, D. 6, and the affidavits submitted with SMG's motion to dismiss, D. 66, D. 67. Beginning in 1970, the ROK and SMG gave permission to a number of third parties to extract sand and gravel from a 661,162 square meter tract of land in Sangam, Mapo-Gu, Seoul, South Korea. D. 6 ¶ 8. The land was owned at that time by Chun. D. 80-3 at 1 (document reflecting Chun's assignment of half of his interest in the land to his son, Geon). From October 1, 1974 through September 30, 1975, the "First United States Army" stationed in South Korea extracted sand and gravel in excess of the allowed amount and illegally sold the extracted sand and gravel. D. 6 ¶ 9. After the extraction, the land was classified as river land and became property of the state pursuant to the South Korean River Act. Id. Following the classification as river land, land on the opposite side of the river was reclaimed in exchange for the original tract of land. Id. ¶ 10. A portion of that reclaimed land is currently owned by KLHC and other portions were sold to private construction companies. Id.

After losing ownership of the land, Chun sought recourse through the South Korean legal system. Id. ¶ 11. In 1991, Chun filed an action in South Korean court against the ROK and SMG and the court concluded that he had already received the equivalent of approximately $1.3 million, which was just compensation for the land at issue. D. 66 ¶¶ 4-8. Chun appealed and the South Korean Supreme Court affirmed. Id. ¶ 8. In 2000, Chun filed a second action against

SMG and was awarded damages equivalent to $713,812, but the court dismissed a number of his claims. Id. ¶¶ 9-19. Chun appealed and the South Korean Supreme Court affirmed. Id. ¶ 18. The South Korean Supreme Court acknowledged liability on the part of the South Korean authorities and the U.S. Army, holding that the U.S. Army was liable for 99% of the compensation. D. 6 ¶ 11. Chun then filed a third action in 2007 against SMG for additional damages and the Seoul Administrative Court and the Seoul High Court held that he had already received just compensation. D. 66 ¶¶ 20-21. He appealed and the South Korean Supreme Court declined to review the case. Id. ¶ 21.

Plaintiffs allege that the South Korean Supreme Court's 2008 decision imputing "an overwhelming portion (more than 99%) of the compensation to the First U.S. Army" was a violation of the US-ROK SOFA Article 23, Paragraph 5 and Special Act No. 1902, which require South Korea to compensate civilians when the U.S. Army causes damage, and also South Korean Law, Special Compensatory Acts No. 6065, Revised No. 6772, which requires that compensation be paid by the authorities that issued permission for the extraction. D. 6 ¶ 11. Plaintiffs allege Special Compensation Act No. 9543 came into effect on March 25, 2009 as a retroactive statute designed to compensate owners of property that had been incorporated into river land and mandated that compensation for the land at issue be paid by South Korean governmental entities. Id. ¶ 12.

On July 1, 2010, Chun orally assigned half of his rights in the land at issue to his son, Geon. D. 80-3 at 1. This assignment included half of Chun's claim to damages. Id.

Following the 2008 decision by the South Korean Supreme Court, Plaintiffs contacted the United States government. D. 6 ¶ 13. An Attorney Advisor to the U.S. Army Claims Service informed Plaintiffs that compensation for damage caused by the U.S. Army to a third party must

4

be paid by the South Korean government but forwarded the inquiry to the U.S. Armed Forces Claims Service office in Korea to direct Plaintiffs' claim to the South Korean government. Id. Plaintiffs contacted the U.S. Armed Forces Claims Service office in Korea and were advised to submit a claim to the Ministry of Justice of South Korea. Id. When the South Korean leadership changed in February 2013 following the presidential election, Plaintiffs contacted the President's office, and their claim was forwarded to the South Korean Supreme Court. Id. ¶ 14. The Supreme Court denied Plaintiffs' petition and confirmed its previous holding. Id.

On July 8, 2013, Plaintiffs submitted a claim to the South Korean Ministry of Justice, which referred the inquiry to the U.S. Armed Forces Claims Service office in Korea. Id. ¶ 15. At Plaintiffs' request, Senator Elizabeth Warren sent an inquiry to the U.S. Army on Plaintiffs' behalf while the claim was pending before the U.S. Armed Forces Claims Service. Id. ¶ 16. On September 26, 2013, Defendant Kim of the U.S. Armed Forces Claims Service office in Korea determined that the claim should be dismissed because Plaintiffs failed to bring a claim against the U.S. Army prior to December 31, 1982, the date Kim determined the statute of limitations expired. Id. ¶ 17. Plaintiffs claim this is contrary to the prior letter from the U.S. Army Claims Service indicating that the claim was properly brought against the South Korean government pursuant to the US-ROK SOFA and that there was no recourse against the U.S. Army for the damage. Id. Plaintiffs allege that Kim falsely determined that the U.S. Army was liable instead of the ROK in violation of both the US-ROK SOFA and South Korean domestic law and also failed to recognize that the Plaintiffs properly filed a claim against the South Korean government within the stated statute of limitations period. Id. As a result of Kim's decision, the Ministry of Justice of South Korea dismissed the Plaintiffs' claim. Id.

Plaintiffs allege that under the South Korean River Act, the South Korean authorities may return reclaimed land if the land no longer needs to be held by the state. Id. ¶ 19. Plaintiffs allege that they held first priority for receiving reclaimed land, but the South Korean authorities improperly gave the land to KLHC instead of Plaintiffs. Id. ¶¶ 19, 22.

**IV.     Procedural History**

Plaintiffs instituted this action on December 30, 2013. D. 1. Defendants have now moved to dismiss. D. 61; D. 64; D. 68; D. 70. The Court heard the parties on the pending motions on April 9, 2015 and took these matters under advisement. D. 90.

**V.     Discussion**

    **A.     <u>Subject Matter Jurisdiction over Claims Against South Korean Defendants</u>**

The Foreign Sovereign Immunities Act ("FSIA") "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 439 (1989). It is undisputed that ROK, SMG and KLHC ("South Korean Defendants") are "foreign states" subject to the protection of the FSIA. See 28 U.S.C. § 1603(a), (b). Unless one of the exceptions contained within the FSIA applies, this Court lacks both subject matter and personal jurisdiction.[1] <u>Universal Trading</u>, 727 F.3d at 16 (citing 28 U.S.C. § 1330; <u>Verlinden B.V. v. Cent. Bank of Nigeria</u>, 461 U.S. 480, 485 n.5 (1983)). Although

---

[1]The First Circuit has not explicitly outlined the burdens of the parties in an FSIA action but adopted the framework of the Second, Third, Fourth, Fifth, Seventh, Ninth, Tenth, Eleventh and D.C. Circuits in <u>Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts</u>, 727 F.3d 10, 17 (1st Cir. 2013). That framework places the burden of production on Plaintiffs to provide evidence that immunity should not be granted pursuant to one of FSIA's exceptions. Id. The burden of persuasion ultimately lies with the foreign sovereign and the inquiry "involves a 'review [of] the allegations in the complaint, the undisputed facts, if any, placed before [the court] by the parties, and—if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue—[resolution of] disputed issues of fact.'" Id. (alteration in original) (quoting <u>Virtual Countries, Inc. v. Republic of S. Afr.</u>, 300 F.3d 230, 241 (2d Cir. 2002)).

Plaintiffs' amended complaint cites only exceptions § 1605(a)(1) and § 1605(a)(3), D. 6 ¶¶ 21-22, at a status conference on the matter Plaintiffs (proceeding *pro se*) also raised the exception at § 1605(a)(2). The Court has considered all three exceptions.

### 1. The FSIA Waiver Exception

28 U.S.C. § 1605(a)(1) provides that a foreign state will not have immunity in any case "in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). Plaintiffs argue the South Korean Defendants "unambiguously and intentionally gave up its jurisdiction on the uncompensated damages of the land" by imputing liability to the U.S. Army when "it is systematically impossible for the Plaintiffs to file a claim against the U.S. Army regarding this matter in the South Korean Court." D. 6 ¶ 21. However, it is clear there is no explicit waiver in the US-ROK SOFA and an explicit waiver cannot be based upon the general fairness arguments advanced here by Plaintiffs. See Argentine Republic, 488 U.S. at 442-43 (reversing grant of jurisdiction despite the fact that certain international agreements set forth substantive rules of conduct and stated that compensation should be paid for certain wrongs, because the Court could not "see how a foreign state can waive its immunity under § 1605(a)(1) by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States"). Thus, an explicit waiver does not apply. The legislative history of the FSIA is instructive as to implicit waivers:

> With respect to implicit waivers, the courts have found such waivers in cases where a foreign state has agreed to arbitration in another country or where a foreign state has agreed that the law of a particular country should govern a contract.

H.R. Rep. No. 94–1487, at 18, U.S. Code Cong. & Admin. News 1976, p. 6617. Here, the US-ROK SOFA explicitly states that claims:

arising out of acts or omissions of members or employees of the United States armed forces, including those employees who are nationals of or ordinarily resident in the Republic of Korea, done in the performance of official duty, or out of any other act, omission or occurrence for which the United States armed forces are legally responsible, and causing damage in the Republic of Korea to third parties, other than the Government of the Republic of Korea, <u>shall be dealt with by the Republic of Korea</u> in accordance with the following provisions . . .

D. 63-1 at 29 (emphasis added). There is no indication of either an explicit or implicit waiver, and, therefore, § 1605(a)(1) cannot apply.

### 2. *The FSIA Commercial Activity Exception*

28 U.S.C.A. § 1605(a)(2) provides that a foreign state is not immune to suit in the United States when:

> the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . . .

28 U.S.C.A. § 1605(a)(2). A commercial activity is defined as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C.A. § 1603(d). The Supreme Court has said that "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607, 614 (1992). The question is not whether the action is performed for "uniquely sovereign objectives" but instead whether the act itself could be performed by a private entity, "[t]hus, a foreign government's issuance of regulations limiting foreign currency exchange is a sovereign activity, because such authoritative control of commerce cannot be exercised by a private party; whereas a contract to

buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods." Id. at 614-15.

Here the complaint alleges that "the South Korean authorities unlawfully gave, without compensation or the Plaintiff's consent, a number of third party extractors . . . permissions to extract sand and gravel from the Plaintiff's land . . . ." D. 6 ¶ 8. Later, "the land in this case became classified as river (hence the right of the land in this case was compulsively taken to the State, according to the South Korean River Act which mandates State ownership of rivers in South Korea)." Id. ¶ 9. However, it is settled law that "expropriation 'constitute[s] a quintessentially sovereign act' falling outside the scope of the commercial activity exception." de Csepel v. Republic of Hungary, 714 F.3d 591, 600 (D.C. Cir. 2013) (citing Rong v. Liaoning Province Gov't, 452 F.3d 883, 890 (D.C. Cir. 2006)). Furthermore, "subsequent commercial transactions involving expropriated property do not give rise to subject matter jurisdiction over claims arising from the original expropriation." Garb v. Republic of Poland, 440 F.3d 579, 587 (2d Cir. 2006).

The complaint also separately alleges that KLHC engaged in commercial activity by issuing bonds amounting to $564 million in the United States on November 22, 2006. D. 6 ¶ 22. However, Plaintiffs do not plead any connection between the alleged issuing of bonds by the KLHC and the land grievances that form the gravamen of Plaintiffs' complaint.

For all of these reasons, Section 1605(a)(2), therefore, does not provide a basis for subject matter jurisdiction over Plaintiffs' claims against the South Korean Defendants.

### 3. The FSIA Takings Exception

28 U.S.C.A. § 1605(a)(3) provides an exception to foreign sovereign immunity in cases in which property is "taken in violation of international law" and "that property or any property

exchanged for such property is owned or operated by an agency or instrumentality of the foreign state [that] is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3). There are three potential takings identified in the complaint: first, the taking of the land submerged in the river by the South Korean government pursuant to the South Korean River Act; second, the refusal by the South Korean government to accord Plaintiffs priority when returning the reclaimed lands; and third, the extraction activities by the U.S. Army in the 1970s that depleted the value of the land. D. 6 ¶¶ 9, 19.

The first two takings cannot provided a basis for subject matter jurisdiction under the takings exception. The takings exception does not reach takings by a foreign government of property within its own borders belonging to its own nationals as such expropriations do not violate international law. See United States v. Belmont, 301 U.S. 324, 332 (1937) (noting that "[w]hat another country has done in the way of taking over property of its nationals . . . is not a matter for judicial consideration here. Such nationals must look to their own government for any redress to which they may be entitled"). At the time of each alleged taking, the property was owned by Chun, a South Korean national. D. 80-3 at 1. Geon, a United States citizen, did not have any interest in the property in question until Chun assigned half of his interest to Geon on July 1, 2010. Id.

The third taking set forth in the complaint is also not a viable basis for subject matter jurisdiction under the takings exception. Plaintiffs allege that the U.S. Army engaged in illegal extraction activities and "illegally sold the extracted sand and gravel," D. 6 ¶ 9, but Plaintiffs do not allege in their complaint that the U.S. Army's extraction of natural resources from the land at issue violated international law. In their opposition, Plaintiffs argue that the "U.S. Army's taking was committed by violating the permitted terms of the extraction, which is in dire violation of

10

Article 7 of the US South Korea SOFA (which prescribes that the U.S. Army must respect the laws and regulations of South Korea)." D. 79 at 3. However, as discussed above, the US-ROK SOFA specifically addresses the U.S. Army's obligation to provide compensation for damages caused in South Korea and gives the South Korean courts exclusive jurisdiction to adjudicate and apportion liability for such damages. D. 63-1 at 29 (providing that all claims arising out of acts or omissions of the United States Army causing damage in the Republic of Korea to non-governmental parties "shall be dealt with by the Republic of Korea"). Indeed, the South Korean courts have adjudicated this issue and provided compensation to Plaintiffs for the alleged damage to the land. See D. 66 ¶¶ 4-21.

Plaintiffs cite de Csepel v. Republic of Hungary, 808 F. Supp. 2d 113 (D.D.C. 2011), affirmed in part, rev'd in part, 714 F.3d 591 (D.C. Cir. 2013) to support the proposition that the Court may exercise jurisdiction over the South Korean Defendants based upon the U.S. Army's extraction activities, but this case is inapposite. In de Csepel, heirs of Hungarian Jews sued the government of Hungary for failing to return artwork confiscated during World War II by Hungary and Nazi Germany. Id. at 120. The district court held that plaintiffs had alleged a substantial and non-frivolous taking in violation of international law as required under § 1605(a)(3) "based on the active involvement of German Nazi officials in the taking of at least a portion of the Herzog Collection" out of Hungary. Id. at 130. The district court recognized that generally a state's expropriation of the property of its own citizens is not a violation of international law but determined "under these extraordinary facts" that the government of Hungary, through its systematic and extreme deprivation of human rights, had "*de facto* stripped" all Hungarian Jews of their citizenship rights prior to the seizures at issue. Id. In the present case, by contrast, Plaintiffs neither allege extraordinary circumstances that would have *de*

11

*facto* stripped Chun of his South Korean citizenship nor do they contend that any branch of the South Korean government had "active involvement" in the U.S. Army's allegedly unlawful extraction activities.

As Plaintiffs have not sufficiently alleged an exception to the South Korean Defendants' sovereign immunity, the Court allows the motions to dismiss by the South Korean Defendants.

### B.    Subject Matter Jurisdiction over Claims Against Kim

Kim, an employee of the U.S. Army, moves to dismiss on the basis that judicial review of a claim decision under the US-ROK SOFA treaty is barred by 10 U.S.C. § 2735 and the Administrative Procedure Act ("APA").  D. 71.  A claim against Kim in his official capacity is treated as a claim against the United States.  This Court cannot exercise jurisdiction over such a suit unless the United States has waived its sovereign immunity explicitly, as "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit."  United States v. Mitchell, 445 U.S. 535, 538 (1980) (alteration and omission in original) (citation omitted).

Congress waived sovereign immunity for claims arising from international agreements and specifically authorized payments of such claims pursuant to the International Agreements Claims Act, 10 U.S.C. § 2734a.  As a preliminary matter, Kim bases his lack of jurisdiction argument on the non-reviewability of final agency decisions pursuant to 10 U.S.C. § 2735, interpreting Plaintiffs' claims as for monetary relief.  D. 71 at 8 (providing, "[w]hether the claim was in fact denied by Richard Kim or denied by the ROK, it was a disposition pursuant to the US-ROK treaty authorized pursuant to the International Agreements Claims Act, 10 U.S.C. § 2734a, [and] judicial review is precluded by section 2735").  Plaintiffs clarify in their opposition that they are not seeking monetary relief.  D. 82 at 3 (stating that counsel "misunderstood" the

Plaintiffs' claim as one for monetary relief and that "Plaintiffs seek correction of [Kim's] arbitrary recommendation"). As such, the Court considers whether it has subject matter jurisdiction over Plaintiffs' equitable claims.

Section 702 of the APA waives sovereign immunity for claims seeking non-monetary relief. 5 U.S.C. § 702; see MacMann v. Titus, 819 F.2d 8, 10 (1st Cir. 1987) (providing that "Congress, through 5 U.S.C. § 702 . . . has waived sovereign immunity for those claims arising under section 1331 that seek 'relief other than money damages'"). Kim correctly notes the APA does not "provide an independent jurisdictional basis" for this action and that it does not apply when other statutes preclude judicial review. D. 71 at 8.[2] Plaintiffs allege jurisdiction under 28 U.S.C. § 1331, which provides for jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Yet a right of action pursuant to a treaty may arise only when expressly indicated by the treaty itself, here the US-ROK SOFA. See Columbia Marine Servs., Inc. v. Reffet Ltd., 861 F.2d 18, 21 (2d Cir. 1988) (upholding dismissal when plaintiffs brought suit under § 1331 and providing that "[a]n action arises under a treaty only when the treaty expressly or by implication provides for a private right of action"). The US-ROK SOFA does not provide for a private right of action granting this Court jurisdiction.

C.  **Defendants' Other Arguments**

SMG, KLHC and Kim raise additional arguments in their motions to dismiss beyond subject matter jurisdiction. SMG argues that Geon lacks standing, the Court lacks personal jurisdiction over SMG, venue is improper and the complaint fails to state a claim on which relief can be granted. D. 65. KLHC argues that the *forum non conveniens* doctrine applies, *res judicata* and collateral estoppel bar Plaintiffs' claims, Plaintiffs' claims are barred by laches and

---

[2]Since Plaintiffs have clarified they do not seek money damages against Kim, the claim that judicial review under § 1331(a) is precluded by § 2735 is irrelevant.

the statute of limitations, that the Court lacks personal jurisdiction over KLHC and the complaint fails to state a claim on which relief can be granted. D. 69. Finally, Kim argues that Geon lacks standing and the complaint fails to state a constitutional or civil rights claim on which relief can be granted. D. 71. Because it lacks subject matter jurisdiction, however, for the reasons discussed above, the Court must dismiss the action and need not consider Defendants' alternate arguments for dismissal.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motions to dismiss, D. 61; D. 64; D. 68; D. 70.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge